JOHN A. PIET, ESQ.
Nevada Bar No. 10717
PIET LAW GROUP
3654 N. Rancho Drive, Ste. 101
Las Vegas, Nevada 89130
*Attorney for Debtor*

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br><br>SPYROS KOUNTANIS<br><br>Debtor. | CASE NO.: BK-S-12-19163 BTB<br><br>IN CHAPTER 11 PROCEEDINGS |

## DEBTOR'S PLAN OF REORGANIZATION NO. 4

In accordance with 11 U.S.C. §1121 and §1106, SPYROS KOUNTANIS (hereinafter referred to as "Debtor"), by and through his attorney, JOHN A. PIET, ESQ., of the law firm of PIET & WRIGHT, file this Debtor's Plan of Reorganization No. 4 (hereinafter referred to as the "Plan").

This Plan under Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101, et seq. (the "Bankruptcy Code") proposes to pay creditors of the Debtor from the reorganization of his residential property and secured debt.

### TABLE OF CONTENTS

I.     Definitions ............................................................................................... 2

II.    Classes of Creditors and Specific Treatment of Claims .................................. 4

       A.    Unclassified Claims ................................................................... 4

       B.    Classified Claims....................................................................... 5

III.   Means for Implementation of the Plan ............................................. 7

IV.    Effect of Confirmation .................................................................... 9

V.     Miscellaneous Provisions ............................................................... 10

# I.
# DEFINITIONS

The following terms, when used in the Plan, shall unless the context otherwise requires, have the following meanings, respectively:

1.  **"Administrative Expense Claim"** shall mean any claim allowed under Section 503 of the Bankruptcy Code.

2.  **"Business Day"** shall mean any day other than Saturday, Sunday, a legal holiday or a day on which national banking institutions in Nevada are authorized or obligated by law or executive order to close.

3.  **"Claim"** shall mean the right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or the right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.  11 U.S.C. § 101(5).

4.  **"Confirmation"** shall mean that after the Court conducts a hearing to determine if the Plan meets the requirements of 11 U.S.C. § 1129, and upon a finding of compliance with the applicable codes and provisions, the Court will enter an order confirming the Plan.  The effect of plan confirmation is defined in 11 U.S.C. § 1141.

5.  **"Confirmation Date"** shall mean the date the Court enters the Order confirming the Plan.

6.  **"Court"** shall mean the United States Bankruptcy Court for the District of Nevada, including the Bankruptcy Judge presiding in the Chapter 11 case of the Debtor.

7.  **"Creditors"** shall be defined pursuant to 11 U.S.C. § 101(10) of the Bankruptcy Code.

8.  **"Debtor"** shall mean SPYROS KOUNTANIS.

9.  **"Discharge"** shall mean that Debtor shall seek entry of an order by the Bankruptcy Court granting Debtor's discharge of debts provided for in the plan (i) on completion of all payments under the plan or (ii) (a) the Bankruptcy Court otherwise grants the discharge for cause after notice and hearing, or (b) the Debtor is granted a discharge made available under section 1141(d)(5)(B) of the Bankruptcy Code by order of the Bankruptcy Court after notice and hearing.

10.  **"Disputed Claim"** shall mean that a party in interest has objected to a creditor's claim pursuant to 11 U.S.C. § 502.

11.  **"Distribution Date"** shall mean the date designated by the Plan on which distribution of payment to Allowed Unsecured Claims shall commence.

12.  **"Effective Date"** shall mean the date the Court enters an order confirming the

2

Plan.

13. **"Final Decree"** A final decree closing the case may be entered after the estate has been "fully administered" pursuant to Fed. R. Bankr. P. 3002 and local rules. Debtor may seek entry of a final decree and order closing Debtor's bankruptcy case prior to entry of the discharge; but, any such entry of an final decree and/or order closing Debtor's case prior to completion of all plan payments shall not have the effect, and is not intended to have the effect, of granting Debtor's discharge absent compliance with the application provisions of the Bankruptcy Code (including section 1141(d)(5)), Federal Rules of Bankruptcy Procedure, Local Rules and any applicable administrative or general orders governing bankruptcy practice and procedure in this District.

14. **"Final Order"** shall mean an order of the Court which, not having been reversed, modified or amended and not being stayed, and the time to appeal from which or to seek review or rehearing of which having expired, has become conclusive of all matters adjudicated thereby and is in full force and effect.

15. **"Lien"** shall mean a charge against or interest in property to secure payment of a debt or performance of an obligation, or a judicial lien obtained by judgment, levy, sequestration, or other legal or equitable process or proceeding effective under applicable law as of the date of the commencement of the reorganization case.

16. **"Plan"** shall mean this Plan of Reorganization in its present form.

17. **"Priority Claim"** shall mean those allowed claims which are entitled to the priority provided for under §507(a) of the Bankruptcy Code.

18. **"Pro Rata Share"** shall mean the amount which is the result of multiplying the monies available for distribution to a named class of creditors by that fraction in which the numerator is the allowed amount of a particular claim in the named class and the denominator is the total of the amounts of all the claims in the named class.

19. **"Reorganized Debtor"** shall mean the status of the Debtor after the Court enters an Order confirming the Plan.

20. **"Secured Claim"** shall mean the claim of any creditor secured by liens on property, which liens are valid, perfected, and enforceable under applicable law, and are not subject to avoidance under the Bankruptcy Code or other applicable non-bankruptcy law, and are duly established in this case, to the extent of the value of the security, as determined in accordance with §506 of the Bankruptcy Code.

21. **"Tax Claim"** shall mean a claim described in 11 U.S.C. §507(a)(8) together with all accrued interest and penalties.

22. **"Unsecured Claims"** shall mean all claimants of any nature, holding claims for unsecured debts, liabilities, demands or claims of any character whatsoever.

23. **"Unsecured Creditor"** shall mean the holder of an unsecured claim.

## II.
## CLASSES OF CREDITORS AND SPECIFIC TREATMENT OF CLAIMS

This Plan constitutes the Chapter 11 plan of reorganization of the Debtor. All Claims against the Debtor are placed in classes (each a "Class") as designated by Classes 1 through 9. In accordance with section 1123(a)(1) of the Bankruptcy Code, the Debtor has not classified Administrative Claims and Priority Tax Claims.

The categories of Claims (as defined in the Bankruptcy Code), listed below classify Claims for all purposes, including, without limitation, voting, confirmation and distribution pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code. The Plan deems a Claim to be classified in a particular Class only to the extent that the Claim qualifies within the description of that Class and shall be deemed classified in a different Class to the extent that any remainder of such Claim qualifies within the description of such different Class. A Claim is in a particular Class only to the extent that any such Claim is allowed in that Class and has not been paid or otherwise settled prior to the effective date of the Plan.

### A.    Unclassified Claims

Certain types of claims are automatically entitled to specific treatment under the Code. They are not considered impaired, and holders of such claims do not vote on the Plan. They may, however, object if, in their view, their treatment under the Plan does not comply with that required by the Code.

**Administrative Expense Claims**

In accordance with § 1123(a)(1) of the Bankruptcy Code, administrative expense claims are not in classes. Each holder of an administrative expense claim allowed under Section 503 of the Bankruptcy Code will be paid in full on the effective date of this Plan, in cash, through the Debtor's monthly plan payments, or upon such other terms as may be agreed upon by the holder of the claim and the Debtor.

**Professional Fees**

Professional fees are unimpaired and are Claims entitled to priority by Section 507(a)(2) of the Bankruptcy Code and will consist of fees for services rendered and expenses incurred by the Court appointed Counsel and other professional persons for the Debtor prior to the effective date of the Plan, as the same are finally approved and allowed by final order of the Court, pursuant to 11 U.S.C Section 330(a) and 503(b)(2), and any other expenses incurred during the course of the Chapter 11 proceeding that have not yet been paid. The members of this class include the law firm of PIET & WRIGHT, Counsel for the Debtor. The anticipated total fees to be paid in this class are in the range of $30,000.00 to $45,000.00, to the Debtor's Attorneys, inclusive of the retainer.

**The United States Trustee**

In accordance with the requirements of section 1129(a)(12) and as a condition to confirmation of the Plan, notwithstanding any other provision in either the Plan or confirmation order to contrary, Debtor will establish at the hearing on confirmation of the Plan either (a) that all quarterly U.S. Trustee fees payable under section 1930(a)(6) of title 28 as of the date of the

confirmation hearing have been paid by Debtor, or (b) that all fees payable under section 1930(a)(6) of title 28 as of the effective date of the Plan will be paid by Debtor on the Effective Date, and Debtor has sufficient unencumbered funds reserved to tender such payment in full. In accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules and section 1930(a)(6) of title 28, fees under section 1930(a)(6) of title 28 shall continue to accrue post-confirmation and be paid timely throughout the pendency of this bankruptcy case by either Debtor or Reorganized Debtor until this case is closed, converted or dismissed. Debtor shall comply with post-confirmation reporting obligations in connection with the calculation and payment of fees due under section 1930(a)(6) of title 28.

**Priority Tax Claims**

Priority tax claims are unsecured income, employment, and other taxes described by Section 507(a)(8) of the Bankruptcy Code. Unless the holder of such a Section 507(a)(8) priority tax claim agrees otherwise, it must receive the present value of such claim, in regular installments paid over a period not exceeding five (5) years from the order of relief. In accordance with section 1123(a)(1) of the Bankruptcy Code, the Debtor has classified Priority Tax Claims.

## B. Classified Claims

**Secured Claims**

Pursuant to the Bankruptcy Code, Claims which are secured by a lien or other security interest may be categorized into a secured and an unsecured component. In general, Claims are Secured Claims to the extent of the value of the collateral that secures the Claims and they are Unsecured Claims to the extent of any deficiency in the value of the collateral. All payment on secured claims will be paid based on the value of the property.

Valuation was achieved through full property appraisals by licensed Nevada Appraiser, copies of which are available upon request of Debtor's counsel. Adequate protection orders entered into on these properties will terminate upon the acceptance of the plan and the regular payments will commence following plan acceptance.

**Class 1.** Class 1 is unimpaired and consists of a secured claim, on the rental property of the Debtor, located at 2050 Warm Springs Road, #4124, Henderson, NV 89014, as follows:

| **Secured Creditor** | **Method** | **Term** | **Interest** | **Payment** | **Principal** |
|---|---|---|---|---|---|
| *U.S. Bank, N.A.* | *Monthly* | *30 years* | *5.375%* | *$ 587.06+ Escrow* | *$115,723.68* |

The claim is secured by liens on the Debtor's real property and will be paid monthly upon confirmation of the Plan and shall continue at the above interest rate and term specified. Class 1 is an unimpaired class, thus the holder of the Class 1 claim is not entitled to vote to accept or reject the Plan.

…

…

5

**Class 2.**  Class 2 is unimpaired and consists of a secured claim, on the rental property of the Debtor, located at 11233 Piazalle Street, Las Vegas, NV 89141, as follows:

| **Secured Creditor** | **Method** | **Term** | **Interest** | **Payment** | **Principal** |
|---|---|---|---|---|---|
| *Ocwen Loan Servicing* | *Monthly* | *40 years* | *2.0% - 3.59%* | *$526.09+*<br>*$247.23 escrow* | *$173,727.25* |

The claim is secured by liens on the Debtor's real property and will be paid monthly upon confirmation of the Plan and shall continue at the above interest rate and term specified. Class 2 is an unimpaired class, thus the holder of the Class 2 claim is not entitled to vote to accept or reject the Plan.

**Class 3.**  Class 3 is impaired and consists of a secured claim, on the rental property of the Debtor, located at 5805 Mac Duff Court, Las Vegas, NV 89141, as follows:

| **Secured Creditor** | **Method** | **Term** | **Interest** | **Payment** | **Principal** |
|---|---|---|---|---|---|
| *Wilmington Savings Fund Society, FSB*<br>*d/b/a Christiana Trust, not individually but as trustee for Pretium Mortgage AcquisitionTrust* | *Monthly* | *30 years* | *5.25%* | *$1,421.92+*<br>*$ 246.05 escrow* | *$257,500.00* |
| *Wilmington Savings Fund Society, FSB (Escrow Shortages)*<br>*d/b/a Christiana Trust, not individually but as trustee for Pretium Mortgage AcquisitionTrust* | *Monthly* | *12 months* | *0.0%* | *$1,606.70* | *$19,280.42* |

The claim is secured by liens on the Debtor's real property and will be paid monthly upon confirmation of the Plan and shall continue at the above interest rate and term specified per the Order Approving Stipulation Resolving Motion to Value and Clarifying Plan Treatment, Docket No. 95, entered September 30, 2013. Class 3 is an impaired class, thus the holder of the Class 3 claim is entitled to vote to accept or reject the Plan.

**Class 4.**  Class 4 is impaired and consists of a secured claim, on the rental property of the Debtor, located at 9345 Thunder Basin, Las Vegas, NV 89149, as follows:

| **Secured Creditor** | **Method** | **Term** | **Interest** | **Payment** | **Principal** |
|---|---|---|---|---|---|
| *U.S. Bank, N.A.* | *Monthly* | *2/1/2014-*<br>*1/1/2035* | *5.25%* | *$1,639.41+*<br>*$ 296.75 escrow* | *$250,000.00* |

The claim is secured by liens on the Debtor's real property and will be paid monthly upon confirmation of the Plan and shall continue at the above interest rate and term specified.  As agreed upon per the stipulation the loan maturity date will be January 1, 2035.  Class 4 is an impaired class, thus the holder of the Class 4 claim is entitled to vote to accept or reject the Plan.

…

…

**Class 5.**  Class 5 is impaired and consists of a secured claim, on the rental property of the Debtor, located 10978 Pentland Downs Street, Las Vegas, Nevada 89141, as follows:

| Secured Creditor | Method | Term | Interest | Payment | Principal |
|---|---|---|---|---|---|
| *Federal National Mortgage* | Monthly | 10/1/2017-9/1/2047 | 5.25% | $1,767.05 | $320,000.00 |
| *Federal National Mortgage (Escrow Shortage)* | Monthly | 10/1/2017-9/1/2020 | 0.0% | $502.82 | $18,101.33 |

The claim is secured by liens on the Debtor's real property and will be paid monthly upon confirmation of the Plan and shall continue at the above interest rate and term. Class 5 is an impaired class, thus the holder of the Class 5 claim is entitled to vote to accept or reject the Plan.

**Class 6.**  Class 6 is impaired and consists of a secured claim, on the rental property of the Debtor, located 42515 West Bravo Drive, Maricopa, AZ 85238, as follows:

| Secured Creditor | Method | Term | Interest | Payment | Principal |
|---|---|---|---|---|---|
| *SunTrust Mortgage Inc.* | Monthly | 10/1/2017-9/1/2047 | 5.00% | $1,744.67+ $ 157.02 escrow | $325,000.00 |
| *SunTrust Mortgage Inc. (Escrow Shortages)* | Monthly | 10/1/2017-9/1/2022 | 0.0% | $367.40 | $22,043.97 |

The claim is secured by liens on the Debtor's real property and will be paid monthly upon confirmation of the Plan and shall continue at the above interest rate and term specified per the Stipulation Clarifying Plan Treatment, Docket No. 311, filed September 11, 2017. Class 6 is an impaired class, thus the holder of the Class 6 claim is entitled to vote to accept or reject the Plan.

**Class 7.**  Class 7 is impaired and consists of a priority and secured tax claim, as follows:

| Secured Creditor | Method | Term | Interest | Payment | Principal |
|---|---|---|---|---|---|
| *Internal Revenue Service (Priority claim)* | Monthly | 5 years | 3.00% | $455.71 | $23,682.19 |
| *Internal Revenue Service (Secured claim)* | Monthly | 5 years | 0.00% | $310.34 | $18,620.45 |

The claim is secured by the Debtor's real property and will be paid monthly upon confirmation of the Plan and shall continue at the above interest rate and term specified. Class 7 is an impaired class, thus the holder of the Class 7 claim is entitled to vote to accept or reject the Plan.

…

…

7

**Class 8.**  Class 8 is unimpaired and consists of a agency secured claim, on the Debtor's insurance agency, as follows:

| Secured Creditor | Method | Term | Interest | Payment | Principal |
|---|---|---|---|---|---|
| *Farmer's Insurance* | *Monthly* | *5 years* | *6.25%* | *$248.77* | *$12,790.83* |

The claim is secured by liens on the Debtor's insurance agency and will be paid monthly upon confirmation of the Plan and shall continue at the above interest rate and term specified. Class 8 is an unimpaired class, thus the holder of the Class 8 claim is not entitled to vote to accept or reject the Plan.

**Unsecured Claims**

Pursuant to § 1129(a)(15) of the Code, all Unsecured Claims will be paid an amount equal in value to the projected disposable income of the Debtor during the five-year period beginning on the date that the first payment is due under the Plan.  The total amount of unsecured claims is $993,993.51. The Debtor's projected disposable income each quarter is $627.87.

**Class 9**.  Class 9 consists of all general unsecured claims against the Debtor, including the unsecured portions of the Debtor's lien holder's claims.  Class 9 creditors shall be paid their Pro Rata share of $627.87 quarterly over a period of five (5) years beginning in the first year after the Effective Date of the Plan and continuing for sixty (60) months (twenty (20) quarters) within the plan period.

Class 9 is an impaired Class and holders of Class 9 claims are entitled to vote to accept or reject the Plan.  Class 9 claims will be treated as follows:

| Class | Claim # | Creditor | Payment Method & Amount | | | Claim Amount |
|---|---|---|---|---|---|---|
| | | | Method | Term | Amount | |
| Class 9 | 1 | Discover Bank (Acct. ending 2088) | Quarterly | 5 years | $10.41 | $16,476.29 |
| Class 9 | 2 | Wells Fargo Card Services (Acct. ending 7164) | | | $19.71 | $31,207.05 |
| Class 9 | 3 | Internal Revenue Service (Acct. ending 1506) | | | $1.69 | $2,678.53 |
| Class 9 | 4 | Wells Fargo Bank, N.A. (Acct. ending 4179) | | | $22.03 | $34,874.61 |
| Class 9 | 5 | Capital One Bank(USA), N.A. (Acct. ending 6811) | | | $6.62 | $10,476.77 |
| Class 9 | 6 | U.S. Bank, N.A. (Acct. ending 2098) | | | $3.13 | $4,955.17 |
| Class 9 | 8 | Wells Fargo Bank, N.A. (Acct. ending 4222) | | | $115.97 | $183,586.89 |
| Class 9 | 9 | Wells Fargo Bank, N.A. (Acct. ending 1707) | | | $57.14 | $90,451.91 |
| Class 9 | 10 | Bank of America, N.A. (acct. ending 2178) | | | $149.05 | $235,956.41 |
| Class 9 | 11 | Wells Fargo Bank - Overdraft (Acct. ending 1506) | | | $1.68 | $2,651.78 |
| Class 9 | 13 | U.S. Bank, N.A. (Acct. ending 7287) | | | $114.98 | $182,032.36 |
| Class 9 | 14 | Federal National Mortgage ("Fannie Mae") (Acct. ending 9473) | | | $87.67 | $138,786.86 |
| Class 9 | 15 | SunTrust Mortgage, Inc. (Acct. ending 3617) | | | $37.81 | $59,858.88 |
| Total | | | | | $627.87 | $993,993.51 |

8

## III.
## MEANS FOR IMPLEMENTATION OF THE PLAN

The Plan sets forth the amount and timing of distributions that are to be made to holders of Claims. The Debtor's payments and distributions under the Plan will be funded by his monthly employment and rental income. The Cash Flow and Feasibility Analysis, attached as "Exhibit B" to the Disclosure Statement, outlines the Debtor's sources and uses of income.

On or about the effective date of the Plan, to the extent necessary, the Debtor shall retain Piet & Wright, 3654 N. Rancho Drive, Ste. 101, Las Vegas, Nevada 89130 as his disbursement agent (the "Disbursement Agent"). Upon confirmation, the Debtor shall begin making monthly distributions to the Disbursement Agent under the Plan. As soon as practical, the Disbursement Agent shall begin making pro rata payments to the Debtor's unsecured creditors holding allowed claims, on a quarterly basis, over the 60 month period. The secured creditors will be paid directly by the Debtor.

In no event, shall the Disbursement Agent be held liable for any failures of the Debtor to make any of the payments required under the Plan. If any holders of allowed claims against the Debtor's estate fail to receive payment in accordance with the Plan, the Bankruptcy Court shall retain jurisdiction to hear and determine all matters related to the implementation of this Plan and the payments required hereunder.

**Distributions to Holders of Disputed Claims**

Except as otherwise provided in the Plan, or upon the entry of a final, non-appealable order of the Bankruptcy Court, or as agreed to by the relevant parties, distributions under the Plan on account of a disputed claim that becomes an allowed claim after the effective date of the Plan shall be begin on the regular quarterly payment date, as established by the Disbursement Agent, which is at least thirty (30) days after such claim becomes an allowed claim.

Notwithstanding anything in the Plan to the contrary, and except as otherwise agreed to by the relevant parties, no partial payments and no partial distributions shall be made with respect to a disputed claim until all such disputes in connection with such disputed claim have been resolved by settlement among the parties or a final order of the Bankruptcy Court. In the event that there are disputed claims requiring adjudication and resolution, the Disbursement Agent shall establish appropriate reserves for potential payment of such Claims.

**Provisions Governing Distributions**

Subject to Bankruptcy Rule 9010, distributions to holders of Allowed Claims will be made at the address of each such holder as set forth on the proofs of claim filed by such holders, or at the last known address of such holder if no proof of claim is filed, or the address on a written change of address noticed to the Debtor. If any holder's distribution is returned as undeliverable, no further distributions to such holder will be made unless and until the Reorganized Debtor are notified pursuant to 11 U.S.C. § 342(c), at which time all currently due missed distributions shall be made to such holder on the next periodic distribution date. Undeliverable distributions shall remain in the possession of the Debtor, until such time as any such distributions become deliverable. Undeliverable distributions shall not be entitled to any additional interest, dividends or other accruals of any kind on account of their distribution

9

being undeliverable.

No later than 210 days after the Effective Date, the Debtor shall file with the Bankruptcy Court a list of the holders of undeliverable distributions. This list shall be maintained and updated periodically in the sole discretion of the Debtor for as long as the Chapter 11 Case stays open. Any holder of an Allowed Claim, irrespective of when a Claim becomes an Allowed Claim, that does not notify the Debtor of such holder's then current address in accordance herewith within the latest of (i) one year after the Effective Date, (ii) 60 days after the attempted delivery of the undeliverable distribution and (iii) 180 days after the date such Claim becomes an Allowed Claim, shall have its Claim for such undeliverable distribution discharged and shall be forever barred, estopped and enjoined from asserting any such Claim against the Debtor or her property. In such cases, (i) any Cash or Equity Interest held for distribution on account of Allowed Claims shall be redistributed to holders of Allowed Claims in the applicable Class on the next periodic distribution date and (ii) any cash held for distribution to other creditors shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code and become property of the Debtor, free of any Claims of such holder with respect thereto. Nothing contained in the Plan shall require the Debtor to attempt to locate any holder of an Allowed Claim.

Checks issued in respect of Allowed Claims will be null and void if not negotiated within 180 days after the issuance of such check. In an effort to ensure that all holders of Allowed Claims receive their allocated distributions, no later than 180 days after the issuance of such checks, the Debtor shall file with the Bankruptcy Court a list of the holders of any un-negotiated checks. This list shall be maintained and updated periodically in the sole discretion of the Debtor for as long as the Chapter 11 Case stays open. Requests for reissuance of any check shall be made directly to the Distribution Agent by the holder of the relevant Allowed Claim with respect to which such check originally was issued. Any holder of an Allowed Claim holding an un-negotiated check that does not request reissuance of such un-negotiated check within 240 days after the date of mailing or other delivery of such check shall have its Claim for such un-negotiated check discharged and be discharged and forever barred, estopped and enjoined from asserting any such Claim against the Debtor or her property. In such cases, any Cash held for payment on account of such Claims shall be property of the Debtor, free of any Claims of such holder with respect thereto. Nothing contained in the Plan shall require the Debtor to attempt to locate any holder of an Allowed Claim.

**Employment of Professionals and Experts**

The Reorganized Debtor may, but shall not be required to, consult with attorneys, accountants, appraisers, brokers or other parties necessary to assist in the proper administration of this Plan and the affairs of the Reorganized Debtor. The Reorganized Debtor may select and employ such persons without Bankruptcy Court review or approval.

**Records**

The Reorganized Debtor shall maintain books and records relating to the affairs of the Reorganized Debtor, and all expenses incurred by or on behalf of the Reorganized Debtor. The Reorganized Debtor shall also maintain records relating to all distributions either required to be made or effectuated under this Plan.

# IV.
# EFFECT OF CONFIRMATION

**Binding Provisions**

Pursuant to § 1141(a) of the Code, the provisions of the Debtor's Confirmed Plan will bind the Debtor, any entity issuing securities under the Plan, any entity acquiring property under the Plan, and any creditor or equity security holder of the Debtor, whether or not the claim or interest of such creditor, equity security holder is impaired under the Plan and whether or not such creditor, equity security holder has accepted the plan.

**Vesting of Property of the Estate in the Reorganized Debtor**

Pursuant to 11 U.S.C. § 1141, on the Effective Date of the Plan, all property of the Debtor shall vest in the Reorganized Debtor, free and clear of liens, claims, interests and encumbrances arising on or before the Effective Date, except those provided in the order approving the Motion to Value, the Plan, or the Confirmation Order. The existing liens and lien rights of those lenders holding claims in Classes 1 through 8 are expressly preserved under the Plan, and their existing liens shall ride through and remain attached to any and all underlying collateral in any transfer of property expressly set forth in, or contemplated by, the Plan.

The reorganized Debtor may operate the rental property and may use, acquire, or dispose of property and compromise or settle any claims without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by the Plan and the confirmation order. Without limiting the foregoing, the Debtor shall pay the charges that he incurs after confirmation for professionals' fees, disbursements, expenses or related support services (including reasonable fees relating to the preparation of professional fee applications) without application to the Bankruptcy Court.

**Modification of Plan**

Pursuant to 11 USC § 1127(e), the plan may be modified at any time after confirmation of the plan but before the completion of payments under the plan, whether or not the plan has been substantially consummated, upon request of the Debtor, the trustee, the United States trustee, or the holder of an allowed unsecured claim, to (1) increase or reduce the amount of payments on claims of a particular class provided for by the plan; (2) extend or reduce the time period for such payments; or (3) alter the amount of the distribution to a creditor whose claim is provided for by the plan to the extent necessary to take account of any payment of such claim made other than under the plan.

Further, pursuant to 11 USC § 1127(f), the plan, as modified, shall become the plan only after there has been disclosure under section 1125 as the court may direct, notice and a hearing, and such modification is approved.

**Final Decree**

Once the estate has been fully administered, as provided by 11 U.S.C. § 350 and Rule

3022 of the Federal Rules of Bankruptcy Procedure, the court, on its own motion or on motion of a party in interest, shall enter a final decree closing the case.

**Discharge**

Confirmation of this Plan does not discharge any debt provided for in this Plan until the court grants a discharge on completion of all payments to unsecured creditors under this Plan, which is five (5) years or twenty (20) quarterly payments, or as otherwise provided in § 1141(d)(5) of the Code. The Debtor will not be discharged from any debt excepted from discharge under §523 of the code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.

**Retention of Jurisdiction**

The Bankruptcy Court retains limited jurisdiction over a confirmed chapter 11 case. This jurisdiction derives both from the general powers of courts to enforce their decrees pursuant to 11 U.S.C. § 105(a), as well as specific sections of the Bankruptcy Code relating to plan implementation and execution. These sections include 11 U.S.C. § 1112, allowing for conversion or dismissal after confirmation; § 1127; allowing for plan modification after confirmation; § 1142, allowing for plan enforcement post-confirmation; and § 1144, allowing for revocation of confirmation.

# V.
## MISCELLANEOUS PROVISIONS

**Exemption from Certain Transfer Taxes**

Pursuant to section 1146(a) of the Bankruptcy Code, any transfers of property pursuant to the Plan shall not be subject to any stamp tax or other similar tax or governmental assessment in the United States, and the confirmation order shall direct the appropriate state or local governmental officials or agents to forgo the collection of any such tax or governmental assessment and to accept for filing and recordation instruments or other documents pursuant to such transfers of property without the payment of any such tax or governmental assessment.

**Successors and Assigns**

The rights, benefits and obligations of any entity named or referred to herein shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such entity.

**Reservation of Rights**

Except as expressly set forth herein, the Plan shall have no force or effect until the Court enters the confirmation order. Neither the filing of the Plan, any statement or provision contained in the Disclosure Statement, nor the taking of any action by the Debtor or any other entity with respect to the Plan shall be or shall be deemed to be an admission or waiver of any rights of: (1) any Debtor with respect to the holders of claims or other entity; or (2) any holder of a Claim or other entity prior to the effective date of the Plan.

**Further Assurances**

The Debtor or the reorganized Debtor, as applicable, all holders of Claims receiving distributions under the Plan and all other entities shall, from time to time, prepare, execute and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan or the confirmation order.

**Severability**

If, prior to confirmation of the Plan, any term or provision of the Plan is held by the Court to be invalid, void or unenforceable, the Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision then will be applicable as altered or interpreted, *provided* that any such alteration or interpretation must be in form and substance reasonably acceptable to the Debtor, and, to the extent such alteration or interpretation affects the rights or treatment of holders of general unsecured claims, such claim holder.

**Filing of Additional Documentation**

On or before the Effective Date, the Debtor may file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of this Plan.

**Notices**

Any notices required to be given under this Plan shall be made pursuant to 11 U.S.C. § 342(c). Any notice that is allowed or required hereunder except for a notice of change of address shall be considered complete on the earlier of (a) three days following the date the notice is sent by United States mail, postage prepaid, or by overnight courier service, or in the case of mailing to a non-United States address, air mail, postage prepaid, or personally delivered; or (b) the date the notice is actually received. Notices shall be sent to:

The Debtor or Reorganized Debtor, at:

    SPYROS KOUNTANIS
    3087 Paseo Mountain Avenue
    Henderson, NV 89052

    John A. Piet, Esq.
    PIET LAW GROUP
    3654 N. Rancho Drive, Ste. 101
    Las Vegas, Nevada 89130

The U.S. Trustee, at:

    United States Trustee's Office
    300 Las Vegas Boulevard South
    Las Vegas, Nevada 89101

Any Creditor in its capacity as such, at its address or facsimile number as reflected on its proof of claim or Notice of Appearance, if any.

Respectfully submitted on September 11, 2017.

/s/  John A. Piet, Esq.
John A. Piet, Esq.
Piet Law Group
3654 North Rancho Drive, Ste. 101, Las Vegas, Nevada 89130
Phone:  702-566-1212
Fax:  702-566-4833
*Attorney for the Debtor*